(No. 3924—

KATIE WRIGHT, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed March 25, 1947.*

JOHN F. GIBBONS, for claimant.

GEORGE F. BARRETT, Attorney General, and C. ARTHUR NEBEL, Assistant Attorney General, for respondent.

ECKERT, C. J.

On May 20th, 1944 the claimant, Katie Wright, employed by the respondent as an Institution Worker at the Alton State Hospital, Alton, Illinois, while carrying a pan of water from the dining room of the hospital to an adjoining kitchen, slipped and fell, sustaining a fracture of the descending ramus of the left pubis. She was hospitalized at the institution, but the following day went to St. Joseph's Hospital, Alton, Illinois for treatment. On May 26th she was removed from the hospital to the home of her daughter, Mrs. B. J. Schaefer, where she was confined to her bed until November 9, 1944.

At that time, claimant's condition not having improved, she returned to St. Joseph's Hospital for diathermic and other treatment, and remained in the hospital until December 9, 1944 when she went back to her daughter's home. She remained in bed there until the spring of 1945.

At the time of the accident, the employer and employee were operating under the provisions of the Workmen's Compensation Act of this state, and notice of the accident and claim for compensation were made within the time provided by the act. The accident arose out of and in the course of claimant's employment.

During the year immediately preceding the injury claimant's earnings were $1,320.00. Her compensation rate, therefore, would be 50% of $25.38, or $12.60. The injury having occurred subsequent to July 1, 1943, this must be increased 17½%, making a compensation rate

of $14.91. Claimant was paid by the respondent for non-productive time the sum of $408.81.

Claimant seeks an award for the following bills which she has paid:

| | |
|---|---|
| C. N. Streeper, Alton, Illinois ambulance service | $ 5.00 |
| St. Joseph's Hospital, Alton, Illinois | 15.00 |
| Prescription Shop, Alton, Illinois, medicines | 49.30 |
| | $74.30 |

For the following bills which have not been paid:

| | |
|---|---|
| Dr. Paul O'Neill, Alton, Illinois | $ 75.00 |
| Dr. Kenneth E. Little, Alton, Illinois | 60.50 |
| Dr. C. E. Merkle, Alton, Illinois | 42.00 |
| Dr. H. P. McCuistion, Alton, Illinois | 35.00 |
| Dr. Lewis Waechter, Alton, Illinois | 358.00 |
| St. Joseph's Hospital, Alton, Illinois | 413.50 |
| Mrs. B. J. Schaefer, Alton, Illinois nursing, etc. | 2,164.00 |
| | $3,138.00 |

For total disability from May 20, 1944, 315 weeks at $14.91 per week, and one week at $3.35, and thereafter an annual pension for life.

Claimant testifying on her own behalf stated that, during her convalescence, when she was not hospitalized, she stayed in her daughter's home, during which time her daughter took care of her; that from the time of the accident, until June, 1945, she was unable to walk alone. She testified, at the time of the hearing that she was then able to walk by herself, but that she was not able to do any work; that she could not use her hand at all; that both her legs continued to trouble her; that at times, she can not sit very long; that she lies down several times a day. On cross-examination she stated that previous to her employment by the respondent she lived with her daughter; that when she left the Alton State Hospital, the day after the accident, she did so because, ''I wanted

to come closer to home. I wanted to go to my daughter's home. I did not go to my daughter's house, but went to the hospital at St. Joseph's." When asked whether or not the officers of the Alton State Hospital recommended that she leave the hospital, she answered, "No, I just told Dr. Strossman I was going to St. Joseph's." She stated that one of the reasons she left the institution was because "it was too hard for my daughter to get out to see me." She also testified to the employment of several doctors, all of whom were of her own choice.

Mrs. B. J. Schaefer, testifying on behalf of claimant, stated that she was Mrs. Wright's daughter; that she had presented her mother with a bill amounting to $2,164.00 for services rendered from May 26, 1944 to April 1, 1945; that the bill included board and room for forty weeks at $10.00 per week, and included nursing services of $5.00 per day for 98 days, from May 26, 1944 to August 31, 1944; of $7.00 per day for 69 days, from September 1, 1944 to November 9, 1944, and of $7.00 per day for 113 days, from December 9, 1944 to April 1, 1945. Mrs. Schaefer testified that during the 40 weeks, for which she charged $10.00 per week for board and room, it was necessary to give her mother a special diet; that she was not a registered nurse, but considered herself a practical nurse. On cross-examination she stated that she had not done practical nursing outside of her own home; that she is married and living with her husband and two children.

Dr. H. P. McCuisition, a witness for claimant, testified that he first saw claimant on May 21, 1944, at St. Joseph's Hospital; that from his examination at that time he found she had a fracture of the descending ramus and the left pelvis. He stated that the fracture was set, and rest in bed was prescribed. He had not seen claimant since the 26th of May, 1944.

Dr. C. E. Merkle, a witness for claimant, testified that he first saw claimant on November 10, 1944; that his examination at that time disclosed that claimant had two knees in a semi-flexed position from having been in bed for some months; that it was difficult and painful for claimant to extend or flex the knees to a normal position; that there was no increase in, or swelling of the knees, and that an X-ray did not show a Rheumatoid arthritic condition. Claimant did have some swelling of the right wrist and hand, but the doctor attributed it to a disuse of the joints. He had not seen claimant since November 20, 1944.

Dr. P. J. O'Neill, testifying for claimant, stated that he first saw claimant at St. Joseph's Hospital on November 20, 1944, and treated her for a period of three or four weeks; that during the time claimant was immobilized in bed, following her injury, to permit healing of the fractured pelvis, she developed a disuse-atrophy of the muscles of the legs, and a Rheumatoid condition of the right wrist and hand. The doctor stated that the immobolization made necessary by the injury probably had aggravated an arthritic condition, which had become permanent.

At the conclusion of the testimony before Commissioner Jenkins, the attorney for claimant stated that Dr. Lewis Waechter had advised claimant he wished to withdraw his statement for services to claimant, and that he desired to make no charge for such services. He refused to testify voluntarily, and neither claimant nor her counsel desired to subpoena him.

From the record, and from the personal observation of the claimant by the commissioner, the court finds, that as a result of her injury, claimant is totally disabled. She is, therefore, entitled to an award in the amount of

$4,000.00. The injury having occurred after July 1, 1943, this must be increased 17½%, making a total of $4,700.00, and thereafter an annual pension for life of 8% of $4,-700.00, or $376. The sum of $408.81, paid to claimant by respondent for non-productive time, must, however, be first deducted.

No award can be made on account of medical, hospital, or nursing services since it is clear from the record that the employee elected to secure such services at her own expense.

Peggy Hamby has rendered a statement in the sum of $35.80 for the taking and transcribing of the evidence. This charge is fair and reasonable.

An award is therefore entered in favor of Peggy Hamby for taking and transcribing the testimony in this case in the amount of $35.80, and an award is entered in favor of claimant, Katie Wright, in the amount of $4,-291.19, as follows:

$2,206.68, accrued, is payable forthwith;
$2,084.51, is payable in weekly installments of $14.91 for a period of 139 weeks, beginning March 31, 1947, with a final payment of $12.02; thereafter an annual pension of $376.00 payable in monthly installments of $31.33 during the term of her natural life.

This court hereby retains jurisdiction of this cause for the making of such other and further orders herein that may be necessary in accordance with the provisions of the Workmen's Compensation Act.

This award is subject to the approval of the Governor as provided in Section 3 of "An Act concerning the payment of compensation awards to State employees."